## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, and STATE FARM FIRE
AND CASUALTY COMPANY,

     Plaintiffs,

v.                           Case No. 8:21-cv-239-TPB-AEP

AT HOME AUTO GLASS LLC,
WILLIAM CAMP, and NICHOLAS
ALEXANDER,

     Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE

This matter is before the Court on Defendants' motions to dismiss the complaint, filed on March 16, 2021, and March 24, 2021. (Docs. 26; 27; 28). Plaintiffs filed responses in opposition on April 27, 2021, April 29, 2021, and May 4, 2021. (Docs. 34; 36; 37). Upon review of the motions, responses, court file, and record, the Court finds as follows:

### Background[1]

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "State Farm") provide their Florida insureds who have comprehensive coverage with no-deductible coverage for motor vehicle windshield repairs or replacements.  Defendant At Home Auto Glass, LLC ("At Home") is a Florida windshield repair company.  Defendants William Camp and Nicholas Alexander are members of At Home.  From October 2018 through December 2020, At Home performed windshield repairs for State Farm insureds and submitted claims to State Farm for the cost of these repairs under assignments of benefits from the insureds.  State Farm has paid At Home up to $1.4 million on these claims.

State Farm alleges that At Home obtained these assignments and insurance payments by unlawfully soliciting and contracting with State Farm's insureds in violation of Florida consumer protection laws.  The misconduct by At Home included:  falsifying information its application to register as a repair shop, concealing information about its business operations, failing to provide customers with written estimates, misrepresenting the nature of the repair charges and the hours spent on repairs, and falsely telling the customer that the repairs would be free or at no cost to them, all in violation of the Florida Motor Vehicle Repair Act, §

---

[1] The Court accepts as true the facts alleged in Plaintiff's complaint for purposes of ruling on the pending motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

559.901 *et seq.*, *F.S.* ("FMVRA").  At Home's invoices submitted to State Farm in connection with the insurance claims included the inflated charges and misrepresentations regarding the hours worked.  At Home also failed to provide customers with the required notice of their right to cancel their contracts with At Home within three days, in violation of the Federal Trade Commission's Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations, 16 C.F.R. § 429.0-429.3 (the "FTC Rule") and the Florida Home Solicitation Sales Act, 501.021 *et seq.*, *F.S* ("FHSSA").  State Farm alleges that the foregoing conduct rendered the resulting insurance claims noncompensable and violated the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et. seq.*, *F.S.* ("FDUTPA").  State Farm alleges that it has been damaged, and that Defendants have been unjustly enriched, by State Farm's making over $1.4 million in payments to At Home.

On February 1, 2021, Plaintiff filed a four-count complaint against At Home, Camp, and Alexander, asserting claims for: (1) damages under FDUTPA, based on allegedly false and deceptive practices and on violations of FMVRA; (2) damages under FDUTPA based on violations of the FTC Rule and FHSSA; (3) damages for unjust enrichment; and (4) declaratory judgment.  Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that State Farm lacks standing to bring these claims, and pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the complaint fails to state a claim for relief.

## **Legal Standard**

Under Rule 12(b)(1), the plaintiff bears the burden to establish the district court's subject matter jurisdiction.  *See, e.g.*, *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010).  A party may attack subject matter jurisdiction through a facial attack or a factual attack.  *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "Facial attacks . . . 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529).  Alternatively, "[f]actual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case."  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## <u>Analysis</u>

### *Article III Standing*

At Home argues that State Farm lacks Article III standing to maintain this action, presenting a facial attack on subject matter jurisdiction.[2]  Article III of the Constitution grants the federal courts the judicial power to resolve actual cases or controversies.  U.S. Const. art. III §§ 1-2; *see also Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 900, 996 (11th Cir. 2020) ("'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  A plaintiff possesses constitutional

---

[2] Because the arguments asserted in the motions to dismiss filed by At Home and the individual Defendants overlap, for the sake of simplicity this Order will refer interchangeably to "Defendants" and to "At Home," except in addressing arguments unique to the individual Defendants.

standing to maintain a suit only where he or she has suffered some injury in fact caused by the defendant, and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotation omitted).  To meet this requirement, a plaintiff must "present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff." *Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1204 (11th Cir. 1991)).  "Whether a plaintiff has Article III standing is a question distinct from whether she has a statutory cause of action." *Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).

At Home argues that State Farm seeks to assert not its own rights, but rights of its insureds under their contracts with At Home.  The Court rejects this argument.  State Farm's complaint references those contracts but clearly asserts State Farm's own rights under FDUTPA and the law of unjust enrichment.  State Farm also alleges a concrete injury in the form of paying up to $1.4 million for allegedly noncompensable windshield repair claims.  "It's safe to say that pointing to a direct harm is the most straightforward way to show a concrete injury . . . . [F]inancial loss come[s] to mind . . . ." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020); *see also Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1019 (M.D. Fla. 2019) (recognizing overpaying for windshield replacements as an injury in fact); *Gov't Employees Ins. Co. v. Clear Vision*

*Windshield Repair, L.L.C.*, No 6:16-cv-2077-Orl-28TBS, 2017 WL 1196438, at * 2 (M.D. Fla. Mar. 29, 2017) (holding that plaintiff insurers sufficiently alleged standing by reason of overpayments and were not asserting rights under insured's contracts with windshield repair company).  State Farm alleges it paid "'a specific amount of money and suffered a corresponding loss.'"  *Gov't Employees Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950, Doc. 59, at 7 (M.D. Fla. Apr. 16, 2020) ("*Glassco I*") (quoting *Wilding*, 941 F.3d at 1125).

At Home next argues that it did not cause whatever injuries may exist.  Importantly, however, "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct," *Lexmark Int'l, Inc. v. Static Control Companies, Inc.*, 572 U.S. 118, 134 n.6 (2014), and traceability is a "relatively modest" burden.  *Bennet v. Spear*, 520 U.S. 154, 171 (1997).  Here, State Farm meets that burden.  It alleges that At Home's conduct in soliciting and contracting with State Farm's insureds and submitted the resulting insurance claims to State Farm led State Farm to make payments to At Home that it was not required to pay.

At Home argues that State Farm was legally required to make the payments, but this argument and others advanced by At Home confuse Article III standing with stating a claim for relief.  The question for standing purposes is simply whether the plaintiff has alleged a *factual* connection between the defendant's conduct and the alleged harm, not whether the conduct renders the defendant legally responsible for the harm.  *See Charles H. Wesley Educ. Foundation, Inc. v.*

*Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("Defendants' causation argument . . . conflates standing with the merits of the case. Causation in the standing context is a question of fact unrelated to an action's propriety as a matter of law.").[3] State Farm has alleged the requisite factual connection here.

At Home's arguments that State Farm's claims lack redressability also fail. The question is whether the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561. Here, State Farm could obtain a monetary award which would sufficiently redress State Farm's alleged economic harm. *See Glassco I,* at 7 n.1 (so ruling on similar facts).

Finally, At Home argues that State Farm lacks prudential standing. Prudential standing requires that the plaintiff's claim fall within the zone of interests protected by the law involved, that the complaint not require the Court to pass on abstract questions or generalized grievances better addressed by legislation, and that the plaintiff assert his or her own rights and interests rather than those of third parties. *See, e.g.*, *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010).

The cause of action provided by FDUTPA is not limited to consumers but extends to "anyone aggrieved by a violation" (for declaratory relief) and to "a person who has suffered a loss as a result of a violation" (for damages). § 502.211(1), (2),

---

[3] *Ironworkers Local Union 68 v. Astrazeneca Pharm., LP*, 634 F.3d 1352 (11th Cir. 2011), relied on by Defendants, did not address Article III standing; it affirmed the district court's dismissal for failure to state a claim upon which relief can be granted. *See id.* at 1370. *Ironworkers Local Union 68* is discussed further below in connection with Defendants' arguments under Rule 12(b)(6) that the complaint fails to state a claim.

*F.S*; *Caribbean Cruise Line, Inc., v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (holding that a party need not be a consumer to file suit under FDUTPA).  The common law of unjust enrichment extends to persons who have conferred a benefit alleged to be unjustly retained by the recipient.  Accordingly, the rights and interests State Farm asserts are within the "zone of interests" protected by laws involved.  As stated above, State Farm asserts its own legal rights; it is not asserting the rights of third parties or a general grievance with a statutory scheme.  State Farm therefore sufficiently alleges standing to bring its claims.  Defendants' motions to dismiss are denied as to this ground.

### *Failure to State a Claim*

Defendants move to dismiss all four counts of the complaint for failure to state a claim.  For the reasons set forth below, State Farm has sufficiently alleged facts to establish that Defendants have violated FDUTPA, but has failed to allege that the payments State Farm made to At Home on windshield repair claims constitute "loss" or "actual damages" as required for recovery.  Counts I and II therefore fail to state a claim for relief.  Count III fails to state a claim for unjust enrichment largely for the same reason.  The Court also dismisses Count IV, requesting declaratory relief, which is duplicative of the other counts.

<u>FDUTPA (Counts I and II)</u>

Counts I and II of the complaint assert claims for damages under FDUTPA. FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or

commerce." § 501.204(1), *F.S.*  To establish a claim under FDUTPA, a plaintiff must establish "(1) a deceptive or unfair act; (2) causation; and (3) actual damages." *Sclar v. OsteoMed, L.P.*, No. 1:17-cv-23247-FAM, 2018 WL 559137 at *3 (S.D. Fla, Jan. 24, 2018).  A plaintiff need not be a consumer to bring a FDUTPA claim, but must "prove that there was an injury or detriment to consumers." *Caribbean Cruise Line,* 169 So. 3d at 169.

### Deceptive or unfair act

A deceptive act is one "likely to deceive a consumer acting reasonably in the same circumstances." *Gov't Employees Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *16 (Sept. 24, 2021) ("*Glassco II*") (quoting *Off. of Atty. Gen., Dep't of Legal Affs. v Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).  An unfair act has been defined as one that offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Alhassid v. Nationstar Mortgage LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)).

Violations of certain statutes or rules may be deemed *per se* unfair, deceptive, or unconscionable acts under FDUTPA.  Where a *per se* violation is shown, the plaintiff is relieved of the burden of independently showing that the defendant's conduct is deceptive or unfair.  *See Hucke v. Kubra Data Transfer Ltd.*, No. 15-14232-CIV-ROSENBERG/LYNCH, 2015 WL 12085833, at *7 (S.D. Fla. Oct. 8, 2015), *report and recommendation adopted*, 160 F. Supp. 3d 1320 (S.D. Fla. 2015).

*Per se* FDUTPA violations may be either express or implied.  An express *per se* violation is one in which the statute or rule allegedly violated explicitly states that violation is a FDUTPA predicate.  An implied *per se* violation is one based on a violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes . . . unfair, deceptive, or unconscionable acts or practices."  § 501.203(3)(c), *F.S.*  Rather than relying on a statutory violation, a plaintiff may pursue a "traditional" FDUTPA claim by pleading and proving that the defendant engaged in conduct that was unfair and deceptive.  With either *per se* or traditional claims, the plaintiff must prove causation and actual damages.

In Count I, State Farm alleges that Defendants' conduct violated FMVRA, giving rise to a *per se* FDUTPA violation.  State Farm's theory is that each FMVRA violation, or perhaps multiple, "pervasive" violations taken together, render the resulting insurance claims noncompensable and therefore fraudulent and "false." Florida's Unfair Insurance Trade Practices Act, § 626.9541, *F.S.*, deems the submission of "false" insurance claims to be unfair and deceptive.  Therefore, State Farm argues, it follows that the submission of each claim constituted a *per se* violation of FDUTPA.  Defendants argue that State Farm cannot rely on alleged FMVRA violations as express or implied *per se* violations under FDUTPA because FMVRA nowhere provides that violations constitute FDUTPA predicates or unfair or deceptive practices.

The Court rejects State Farm's argument that FMVRA violations necessarily render all resulting claims noncompensable.  This is the linchpin of State Farm's

argument for recovery of all the payments it has made, but State Farm has pointed to no provision in the applicable insurance policies and to no authority under FMVRA, FDUTPA, or principles of insurance law to support it.[4]  *See Glassco II*, at *8, 16 (holding that FMVRA violations do not render insurance claims noncompensable).  Furthermore, FMVRA does not provide that violations of the statute constitute deceptive and unfair trade practices under FDUTPA, nor does FMVRA characterize violations as unfair, deceptive, or unconscionable.  *See* §§ 559.901-9221, *F.S.*; *see also Glassco II*, at *16; *Feheley v. LAI Games Sales, Inc.*, No. 08-23060-CIV, 2009 WL 2474061, at *4 (S.D. Fla. 2009) (noting that the relevant statute "includes no explicit declaration that a violation constitutes an unfair, unconscionable, or deceptive trade practice, as do other statutory provisions that operate as implied predicates.").  "[N]o Florida caselaw hold[s] that technical violations under the Repair Act constitute FDUTPA violations."  *Glassco II*, at *16.

At the same time, some FMVRA provisions do "proscribe[] . . . unfair, deceptive, or unconscionable acts or practices." § 501.203(3)(c) *F.S.*  For example, FMVRA specifically prohibits "mak[ing] or authoriz[ing] in any manner or by any means whatever any written or oral statement which is untrue, deceptive or

---

[4] Florida courts have allowed repair shop customers to withhold payment or recover monies already paid to repair shops, but FMVRA expressly provides a cause of action to customers. § 559.921(1), *F.S.*  State Farm is not a customer of At Home and its reliance on these cases is therefore misplaced.  *See Glassco I*, at 17 n.5.  State Farm also relies on *1616 Sunrise Motors, Inc. v. A-Leet Leasing of Fla.*, 547 So. 2d 267 (Fla. 4th DCA 1989).  The appellate court in that case declined to allow a repair shop to enforce its lien against the owner of the vehicle at issue, who was not a customer of the shop.  But FMVRA expressly provides that a repair shop who has violated FMVRA may not enforce its lien for repairs by refusing to return the vehicle to the customer or "in any other fashion."  § 559.919, *F.S.*  At Home is not attempting to enforce a lien and this case is therefore of no help to State Farm.

misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive or misleading," as well as making false promises to induce the customer to authorize the repair of a vehicle. *See* § 559.920(8), (9), (17), *F.S.* While Count I of the complaint alleges what might be characterized as "technical" violations of FMVRA, it also alleges conduct that could be fairly characterized as "untrue, deceptive or misleading," such as misrepresenting the hours spent on the repairs and charging inflated prices not disclosed to the customer. These allegations are sufficient to state a FDUTPA violation under either a traditional theory or an implied *per se* theory. *See Glassco II* at *16-17 (denying summary judgment on FDUTPA claim where evidence supported conclusion that windshield repair company billed for more time than it took to perform repairs). State Farm may also be able to independently establish that other alleged actions and omissions by At Home, considered individually or together, are deceptive or misleading.[5] *See id*. at *17 (noting that whether conduct is an unfair or deceptive trade practice is generally a question of fact). While the Court rejects State Farm's argument based on the theory that FMVRA or FDUTPA violations automatically rendered all claims noncompensable, State Farm has otherwise sufficiently pled a FDUTPA violation in Count I.

---

[5] State Farm alleges that in submitting each claim, At Home implicitly but falsely represented that it was properly licensed. State Farm, however, offers no authority for this "implicit representation" theory. False representations in the application for registration do not render a business's registration void, but only subject to revocation by the Department of Agriculture and Consumer Services. *See* §§ 559.921(4)(a)(2), 559.921(4)(b)(4), *F.S.*

In Count II, State Farm seeks to base a FDUTPA claim on violations of the FTC Rule and FHSSA. The FTC Rule prohibits selling consumer goods or services with a purchase price over $130 at a place other than the seller's place of business without providing the customer a copy of the contract and both written and oral notice that the customer has a right to cancel the contract within three days. 16 C.F.R. §§ 429.0(a), 429.1. FHSSA similarly requires a written contract, provides that the customer has a right to cancel, and requires that the seller provide the customer with written notice of that right. §§ 501.021, 501.025, 501.031, *F.S.* FHSSA also prohibits misrepresentations regarding a customer's right to cancel and other matters, and makes it unlawful for anyone to conduct home solicitations without a permit. § 501.022, *F.S.* State Farm alleges that At Home solicited State Farm's insureds at their homes or other public places though unlicensed salespeople, failed to provide customers with required copies of contracts and with notice of their right to cancel, and made misleading representations to customers concerning the right to cancel and other matters.

At Home argues that State Farm cannot rely on the FTC Rule or FHSSA to establish *per se* violations under FDUTPA. The Court disagrees. The FTC Rule expressly provides that violations are "unfair and deceptive." 16 C.F.R. §§ 429.0-429.3. FHSSA imposes the same notice requirement as the FTC Rule; therefore, violation of this requirement under FHSSA can serve as a *per se* FDUTPA predicate as well. To the extent State Farm can demonstrate misleading statements regarding the right to cancel or other matters, those could constitute unfair or

deceptive practices under a *per se* or traditional approach.  Accordingly, State Farm

in Count II has sufficiently pled the first element of a FDUPTA claim, an unfair,

deceptive, or unconscionable act.[6]

### *Harm to Consumers*

While both consumers and non-consumers may seek damages under

FDUTPA, a non-consumer plaintiff must "allege facts plausibly suggesting that

Defendants' actions were likely to cause consumer harm."  *Collier HMA Physician*

*Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-cv-408-FtM-38MRM, 2019 WL

277733, at *11 (M.D. Fla. Jan. 22, 2019); *Caribbean Cruise Line*, 169 So. 3d at 169

("[W]hile the claimant would have to prove that *there was an injury or detriment to*

*consumers* in order to satisfy all of the elements of a FDUTPA claim, the

claimant *does not have to be a consumer* to bring the claim.").

State Farm's complaint alleges that At Home concealed and misrepresented

information as part of an orchestrated scheme to induce customers to enter

contracts with At Home for the repair of their windshields at inflated amounts, so

that At Home could recover insurance proceeds from State Farm.  Such conduct was

likely to result in harm or detriment to State Farm's insureds, who were consumers

of At Home's services.  *See Glassco II*, at *16 ("[F]raudulent conduct in the context

of billing insurance companies qualifies as deceptive acts that harms consumers

---

[6] Defendant Camp argues that the facts alleged fail to show that At Home engaged in a "home solicitation sale" under FHSSA, on the ground that FHSSA only applies where a consumer credit arrangement is involved.  FHSSA, however, covers cash transactions as well as credit sales and State Farm alleges that At Home had its customers sign documents agreeing to pay invoice amounts if State Farm did not pay.  The transactions alleged are covered by FHSSA.

(both the insurance company and its insureds) for FDUTPA purposes.").[7]  State Farm therefore meets the requirement that harm or detriment to consumers be alleged.

*Causation*

At Home argues that State Farm's allegations regarding causation are speculative, but they plausibly demonstrate a causal link between Defendants' conduct and State Farm's payments to At Home.  Whether the chain of causation is sufficiently direct and foreseeable to constitute proximate or legal cause presents a question of fact better reserved for further proceedings on a more complete record. *See Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005) ("The issue of proximate cause is generally a question of fact concerned with 'whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred.'") (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)).  State Farm has sufficiently alleged causation.

---

[7] State Farm itself falls within FDUTPA's broad statutory definition of "consumer," *see* § 501.203(7), *F.S.*, and State Farm alleges it has been harmed by At Home's conduct.  The complaint therefore arguably alleges harm to "consumers" on that basis as well.  *See Glassco II*, at *16 ("Geico fits under FDUTPA's broad definition of 'consumer,' which includes 'any commercial entity, however denominated.'").  The Court, however, is more inclined to think that "consumer" as used in *Caribbean Cruise Line* and other cases imposing a "consumer harm" requirement refers to one who purchases goods or services. *See, e.g., Badillo v. Playboy Entm't Grp., Inc.*, No. 8:04-cv-591-JSM-TBM, 2006 WL 785707, at *6 (M.D. Fla. Mar. 28, 2006) (holding that "consumer" under FDUTPA refers to a purchaser of goods or services).

*Loss and Actual Damages*

The remaining question is whether State Farm's payments to At Home constitute an injury cognizable under FDUTPA, that is, whether they represent "loss" or "actual damages" as required for recovery under § 501.211(2), *F.S.*  The Court concludes they do not.  As an insurance company, State Farm is in the business of collecting premiums and paying claims in accordance with the terms of the governing insurance policies.  Such payments could constitute "losses" to State Farm only if State Farm was not obligated to make them or not obligated to pay the amounts it did.  If the governing insurance policies obligated State Farm to pay the claims, and no other law relieved State Farm of that obligation, then notwithstanding the existence of FDUTPA violations or other misconduct directed at its insureds, State Farm suffered no loss when it paid the claims.  *See Ironworkers Local Union 68 v. Astrazeneca Pharm.*, 634 F.3d 1352, 1364 (11th Cir. 2011) (holding that dismissal of the insurers' complaint was required because, under the terms of the insurance contracts, the insurers had "assumed the risk of paying for all prescription drugs covered by their policies, including medically unnecessary or inappropriate prescriptions – even those caused by fraudulent marketing.")

State Farm seeks to recover the entirety of the $1.4 million in insurance benefits it has paid to At Home on the theory that the claims were noncompensable. As set forth above, however, the mere existence of FMVRA or FDUTPA violations does not render insurance claims noncompensable.  Nor has State Farm pointed to

relevant policy language or described its claims handling process to show that it was not required to pay the claims at all or to pay as much as it did.  It alleges only that "the applicable terms of the Insured's policy . . . govern[] the amount the State Farm Plaintiffs will pay for the auto glass repair service."  (Doc. 1 at ¶ 34).  The "applicable terms" are not discussed, and there is no allegation of fact showing that the amounts State Farm paid were impacted by At Home's alleged misrepresentations as to the time spent on repairs.  State Farm has therefore failed to allege a loss.  Count I and Count II are therefore dismissed without prejudice, with leave to amend. [8]

Unjust Enrichment (Count III)

State Farm claims that Defendants were unjustly enriched through an "unlawful scheme," arguing that At Home was never entitled to compensation for work unlawfully completed and that therefore it would be inequitable for Defendants to retain those payments.  To state a cause of action for unjust enrichment, a complaint must allege that (1) the plaintiff conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; (3) the defendant has

---

[8] FDUTPA damages are "generally" measured by the difference in value of the product or service as represented versus the product or service as purchased.  *See Rollins Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *see also Glassco II*, at \*17.  If State Farm can successfully allege it overpaid At Home on one or more claims, actual damages could be measured by the difference between how much At Home billed and how much it should have billed, assuming a corresponding impact on State Farm's payments.  *See Glassco II*, at \*17.  However, as the recent decision in *Tymar Distribution LLC v. Mitchell Group USA, LLC*, No. 21-21976-CIV-ALTONAGA/Torres, 2021 WL 4077966, at \*4-7 (S.D. Fla. Sept. 8, 2021), persuasively explains, where, as in this case, the plaintiff is not a purchaser of goods or services, "actual damages" may be measured in other ways.

accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp 3d 1307, 1328 (S.D. Fla. 2017).

The complaint appears to allege facts falling within the first three elements of unjust enrichment: State Farm conferred a benefit on At Home in the form of payments on insurance claims, and At Home knowingly accepted and retained them. The remaining issue is whether State Farm alleges facts under which it would be unjust to allow At Home to retain the alleged benefit without paying for it by returning the payments. That the payments were made pursuant to an assignment of benefits by State Farm's insured to At Home does not preclude an unjust enrichment claim, because State Farm is not in privity with At Home. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). But At Home provided consideration for the benefit it received by repairing the windshields of State Farm's insureds. A recipient's providing adequate consideration "to someone" generally precludes an unjust enrichment claim. *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007).

State Farm relies primarily on *Silver Star*, 739 F.3d at 584-85, in which the Eleventh Circuit held an insurer could pursue an unjust enrichment claim to recover insurance payments to a medical provider who had committed statutory violations while providing the medical services. In *Silver Star*, however, unlike

here, the statutory scheme expressly provided that insurers were not obligated to pay claims submitted by noncompliant providers. *Id*. at 583. Accordingly, the payments State Farm made to that provider were payments the provider "was not legally entitled to receive in the first place." *Id*. at 584. Here, as discussed above, the claims At Home submitted were not rendered noncompensable simply because At Home committed FMVRA, FTC Rule, or FHSSA violations. Accordingly, State Farm's unjust enrichment claim seeking to recover the entirety of the $1.4 million in payments fails. *See Performance Orthopaedics*, 278 F. Supp. 3d at 1330-31 (holding that insurer's complaint failed to state a claim for unjust enrichment where the relevant statutes did not provide that services in violation of the statutes were noncompensable).

State Farm's allegations that At Home submitted inflated invoices overstating the hours At Home worked could in theory support a more limited claim for unjust enrichment. *See Glassco II*, at *13-14. To proceed on that theory, State Farm would have to allege not only that the hours worked or invoice amounts were inflated, but also that the payments State Farm made to At Home were correspondingly inflated, which it has not done in the existing complaint. Accordingly, Count III is dismissed with leave to amend.

<u>Declaratory Judgment (Count IV)</u>

State Farm seeks a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring "all outstanding unpaid, or allegedly underpaid, claims and charges At Home submitted . . . are not owed." (Doc. 1 at 42). Given the Court's

ruling on the other counts of the complaint, State Farm has not shown it is entitled to the declaration it requests.  Further, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Aguilera v. Dist. Director*, 423 F. App'x 916, 919 (11th Cir. 2016). Because the Court's ruling on the other counts will decide the issues at stake in the count for declaratory judgment, a declaration would serve no useful purpose.  Thus, the Court dismisses State Farm's declaratory judgment claim with leave to amend.

<u>Alexander's Individual Liability</u>

In his motion to dismiss, Defendant Alexander raises the additional argument that State Farm did not plead sufficient facts to raise a right of relief against him as an individual.  To proceed against an individual under FDUTPA, the plaintiff "must allege that the individual was a direct participant in the improper dealings." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008). State Farm sufficiently alleges that Alexander was a direct participant, as the complaint notes that Alexander founded and managed At Home and served as salesperson for at least 56 of the claims at issue.  Defendant Alexander also argues that he cannot be unjustly enriched by State Farm because he received no benefit. State Farm argues that At Home is "a pass-through entity" that allows Alexander to profit from the payments of insurance benefits.  That At Home is such an entity is sufficiently alleged, as is Alexander's benefit under this theory.  *See State Farm Fire & Cas. Co. v. Silver Star Health and Rehab Inc.*, No. 6:10-cv-1103-GAP-GJK, 2011 WL 6338496 at *7 (M.D. Fla Dec. 19, 2011), *aff'd*, 739 F.3d 579 (11th Cir. 2013).

Alexander's motion to dismiss will be denied as to these grounds, but granted on the other grounds set forth above.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.    "Defendant At Home Auto Glass, LLC's Motion to Dismiss" (Doc.  26) is **GRANTED**.

2.    "Defendant Camp's Motion to Dismiss" (Doc. 27) is **GRANTED**.

3.    "Defendant Nicholas Alexander's Motion to Dismiss" (Doc. 28) is **GRANTED**.

4.    Plaintiffs' complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file an amended complaint within 21 days from the date of this Order.  Failure to file an amended complaint as directed will result in this Order becoming a final judgment.  *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of December, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**