## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, and STATE FARM FIRE
AND CASUALTY COMPANY,

      Plaintiffs,

v.                            Case No. 8:21-cv-239-TPB-AEP

AT HOME AUTO GLASS LLC,
WILLIAM CAMP, and NICHOLAS
ALEXANDER,

      Defendants.

_____/

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This matter is before the Court on "Defendant, At Home's, Motion for Summary Judgment" (Doc. 152); "William Camp's Motion for Summary Judgment" (Doc. 153), "Nicholas Alexander's Motion for Summary Judgment" (Doc. 155), and "Plaintiff's Motion for Partial Summary Judgment" (Doc. 156). The parties filed responses in opposition and replies. (Docs. 165, 168-178). The Court held a hearing on the motions on April 25, 2024. (Doc. 194). Upon review of the motions, responses, replies, argument of counsel, court file, and record, the Court finds as follows:

## Background

For the past decade or so insurance companies have maintained that Florida law relating to auto glass coverage and claims gave rise to large scale systemic fraud and abuse.[1]  Prior to 2023, when the Florida Legislature changed various aspects of the laws relating to auto glass claims, insurance companies found themselves in a difficult situation.  Pursuant to § 627.7288, *F.S.*, insurance companies providing comprehensive automobile coverage were required to offer windshield repair coverage with no deductible.  And pursuant to § 627.428, *F.S.*, insureds or their assignees who prevailed as plaintiffs in lawsuits against insurance companies were entitled to recover their attorneys' fees.  Under the pre-2023 statutory framework, if an insurer decided to contest a windshield claim and it got sued, the insurer risked having to pay the plaintiff insured's attorney fees even if the plaintiff recovered only a very small amount.  But if an insurer won, it could not usually recover its attorneys' fees from the plaintiff insured.  By 2022 tens of thousands of "windshield cases" were filed every year in state courts throughout Florida.[2]

In 2023 the Florida Legislature made various changes to Florida law that directly impacted auto glass litigation.  Two such changes were significant.  Section § 627.7289, *F.S.*, was enacted which prohibited post-loss assignments of benefits

---

[1] *See Florida Legislature Passes Bill Fixing Cracks in Windshield Laws*, Capital Soup, May 2, 2023, available at https://capitalsoup.com/2023/05/02/florida-legislature-passes-bill-fixing-cracks-in-windshield-laws/#:~:text=The%20Florida%20Legislature%20today%20passed%20Senate%20Bill%201002.
[2] *Id.*

relating to windshield repair or replacement claims after July 1, 2023, and rendered such assignments void. And § 627.428, *F.S.*, which provided for "one way" attorney fees in favor of prevailing plaintiffs, was repealed.

Many of these statutory changes, which were supported by the insurance industry, were specifically designed to combat fraud and abuse in connection with auto glass claims.[3] Prior to 2023, the insurance industry had been unsuccessful in its attempts to change Florida law, and insurance companies struggled to find cost-effective ways of combatting what they believed to be systemic fraud and abuse in connection with auto glass claims. This action, along with similar actions filed by other insurance companies prior to 2023, represents an attempt to address fraud and abuse in connection with auto glass claims on a grand scale through one action in federal court, as opposed to litigating tens of thousands of individual cases in state courts.[4]

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "State Farm") provide their Florida insureds who have comprehensive coverage with no-deductible coverage for motor vehicle windshield repairs or replacements as required by Florida law. Defendant At Home Auto Glass, LLC ("At Home") is a Florida windshield repair company. Defendants William Camp and Nicholas Alexander are members of At Home. From

---

[3] *Id.*

[4] *See, e.g., Government Employees Ins. Co. v. Glassco, Inc.*, 8:19-cv-01950-KKM-JSS (M.D. Fla.); *Government Employees Ins. Co. et al. v. Auto Glass America, LLC*, No. 8:18-cv-00856-MSS-JSS (M.D. Fla.); *Government Employees Ins. Co. v. Clear Vision Windshield Repair, LLC.*, 8:16-cv-02241-EAK-MAP.

late 2018 through early 2021, At Home performed windshield repairs for State Farm insureds and submitted claims to State Farm for the cost of these repairs under assignments of benefits from the insureds.  State Farm has paid At Home over $1 million on these claims.  At Home, like various other windshield repair companies, has filed a multitude of lawsuits in Florida state court alleging that State Farm owes additional amounts on the claims.

In early 2021, State Farm ceased paying anything on claims submitted by At Home and filed this lawsuit for damages and declaratory relief.  State Farm alleges that At Home obtained the assignments from its customers and insurance payments from State Farm by unlawfully soliciting and contracting with State Farm's insureds in violation of Florida consumer protection laws.  The misconduct alleged included falsely telling the customers that the repairs would be performed at no cost to them and failing to provide customers with the required notice of their right to cancel their contracts with At Home within three days, in violation of the "FTC Rule" regarding cooling-off periods and the Florida Home Solicitation Sales Act, 501.021 *et seq.*, *F.S* ("FHSSA").  State Farm further alleges that At Home's invoices submitted to State Farm in connection with the insurance claims included fabricated charges, misrepresentations regarding the hours worked, and misrepresentations that the insureds had reviewed and approved At Home's charges, when in fact they had not.

State Farm asserts the insurance claims submitted by At Home were non-compensable, based on operation of a fraud and concealment provision contained in the relevant policies, which provided:

> There is no coverage under this policy for any person who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

State Farm's amended complaint includes four counts: (1) FDUTPA violations, based on allegedly false and deceptive practices; (2) FDUTPA violations, based on violations of the FTC Rule and FHSSA; (3) unjust enrichment; and (4) declaratory judgment.  The two FDUTPA counts and the unjust enrichment count seek more than $1 million in damages, representing amounts State Farm has paid on claims submitted by At Home.  In the declaratory judgment count, State Farm seeks a declaration that it owes nothing further on the claims on which it has made payment (which At Home challenges as insufficient), and owes nothing on the claims it has denied altogether pending the outcome of this lawsuit.

Defendants have moved for summary judgment on all State Farm's claims against them.  In the alternative, At Home moves to dismiss the declaratory judgment count as a matter of the Court's discretion.   State Farm has cross-moved for partial summary judgment in its favor as to Counts I (FDUTPA), III (Unjust Enrichment), and IV (Declaratory Judgment).  Between the cross-motions, responses, and replies, the parties have submitted over 250 pages of briefing on these motions.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the party moving for summary judgment will bear the burden of proof on an issue at trial, meeting its initial burden of demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce

evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the non-moving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

The Declaratory Judgment Act vests federal courts with the power to "declare the rights and other legal relations of any interested party seeking such a declaration," but it imposes no duty to make such a declaration. *See* 28 U.S.C. § 2201; *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328, 1330 (11th Cir. 2005). In exercising their discretion as to whether to issue a declaration, courts consider, among other things, the balance between state and federal interests, whether a declaratory judgment would settle the controversy, and whether it would serve a useful purpose in clarifying the legal relations in issue. *Id.* at 1331.

<u>Analysis</u>

***FDUTPA***

In Counts I and II of its complaint, State Farm seeks damages from Defendants under FDUTPA.  Count I is a "traditional" FDUTPA clam based on allegedly false and deceptive statements made by At Home.  Count II is a claim under FDUTPA based on At Home's alleged violations of the FTC Rule and the FHSSA by failing to provide customers with copies of their contract and advise them of their right to cancel the transaction.

To establish a claim under FDUTPA, a plaintiff must prove (1) a deceptive or unfair act; (2) causation; and (3) actual damages.  *See, e.g.*, *KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1073 (Fla. 5th DCA 2008); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  A deceptive act is one "likely to deceive a consumer acting reasonably in the same circumstances."  *Gov't Employees Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *16 (Sept. 24, 2021) (quoting *Off. of Atty. Gen., Dep't of Legal Affs. v Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).  An unfair act has been defined as "one that offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Alhassid v. Nationstar Mortgage LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)) (internal quotation marks omitted).[5]

---

[5] An alternative definition of an "unfair" practice is one which causes substantial injury to a consumer, which the consumer could not reasonably have avoided, and which is not outweighed by countervailing benefits to the consumer or to competition.  *See Porsche Cars N. Am., Inc., v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014).  The Court need not

While a plaintiff need not be a consumer to pursue a claim under FDUTPA,

Florida case law requires a plaintiff to prove harm to a consumer or consumers.

*See, e.g.*, *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (holding

that a FDUTPA plaintiff must prove "there was an injury or detriment to

consumers.") (quoting *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm

Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015)); *CMR Constr. & Roofing,

LLC v. UCMS, LLC*, No. 21-11183, 2022 WL 3012298, at *3-4 (11th Cir. July 29,

2022) ("[I]n order to satisfy the first element for a claim for both damages and

injunctive relief under FDUTPA – i.e., a deceptive act or unfair practice – the

plaintiff must allege that the relevant act or practice was harmful to a consumer.");

*Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA

2019) ("While an entity does not have to be a consumer to bring a FDUTPA claim,

it still must prove the elements of the claim, including an injury to a consumer.")

(citing *Caribbean Cruise Line,* 169 So. 3d at 169); *Trasco Wellness, LCC v. Tampa

Bay Spine & Sports Med., LLC*, No. 8:23-cv-2536-WFJ-UAM, 2024 WL 1466322, at

*3 (M.D. Fla. Apr. 4, 2024) ("To survive a motion to dismiss, Plaintiff must state

facts showing that consumers were actually harmed by Defendants' allegedly

fraudulent filings.").

Defendants seek summary judgment on State Farm's FDUTPA claims

arguing, among other things, that "State Farm has not even alleged, let alone

supported on its factual record, any particularized injury to even one discrete

---

decide between the competing definitions as the ground relied on in this Order applies to
both.

insured resulting from any of At Home's allegedly unfair or deceptive acts."
Defendants argue that the consumers involved in the underlying transactions – At
Home's customers who were also State Farm's insureds – got "exactly what [they]
bargained for – a windshield replacement for no cost."

State Farm does not dispute that At Home's customers received a repaired
windshield at no cost to them.  Instead, State Farm argues that the actions
complained of "caused *State Farm* to pay At Home for claims with no coverage"
(emphasis supplied), and that constitutes consumer harm because State Farm itself
is a "consumer."  On this point, State Farm cites *Allstate Ins. Co. v. Auto Glass Am.,
LLC*, 418 F. Supp. 3d 1009 (M.D. Fla. 2019) and *State Farm Mut. Auto. Ins. Co. v.
Health & Wellness Services, Inc.*, 389 F. Supp. 3d 1137 (S.D. Fla. 2018).  But those
cases do not hold that the insurers involved were themselves consumers.  They hold
instead that a FDUTPA plaintiff need not be a consumer in order to recover.  State
Farm also suggests (but does not quite argue) that it is a consumer for purposes of
the consumer harm requirement because it meets the statutory definition of
"consumer" in FDUTPA.  That definition, set forth in § 501.203(7), *F.S.*, is so broad
that it would include basically any and every conceivable person, entity, or group,
excluding governmental entities.[6]  State Farm would fall within the definition, to

---

[6] That section provides: "'Consumer' means an individual; child, by and through its parent
or legal guardian; business; firm; association; joint venture; partnership; estate; trust;
business trust; syndicate; fiduciary; corporation; any commercial entity, however
denominated; or any other group or combination." § 501.203(7), *F.S.*  The word "consumer"
is rarely used in the statute itself, and does not appear in the sections proscribing unfair
and deceptive practices and providing for individual remedies.  The case law requiring
consumer harm does not rely on the statutory definition of "consumer" but derives the
requirement from case law definitions of "unfair" and "deceptive" practices under FDUTPA,

be sure, but that would be true of any conceivable plaintiff (excluding governmental entities).  It is obvious, however, that the cases cited above imposing the consumer harm requirement do not use the term "consumer" in this broad sense.  If they did, the consumer harm requirement would be meaningless because it would always be met.

For purposes of the consumer harm requirement, then, "consumer" simply means a purchaser and consumer of goods or services.  *See Whertec, Inc. v. Salmon*, No. 3:20-cv-1254-BJD-PDB, 2021 WL 3555676, at *6 (M.D. Fla. Apr. 28, 2021) (defining "consumer" for purpose of the consumer harm requirement as "the purchaser of a good or service.").  In these transactions, State Farm acted as a provider of insurance services, not as a purchaser of goods or services, and therefore harm to State Farm itself, without more, does not show the required consumer harm.  *See CMR*, 2022 WL 3012298, at *4 ("Because CMR alleged harm solely to itself – in its capacity as the construction service provider, and not to the consumer of its services – CMR failed to allege a harm to a consumer.").

State Farm alternatively argues that the law does not require State Farm to show "specific harm to its customers," but merely "harm to the consuming public" or injury of a "type that impacts consumers generally."  But State Farm does not explain what types of injuries it has in mind in the context of this case, nor does it point to record evidence of any kind of generalized harm to consumers.  *See Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla.

---

which are terms the statute does not define.  *See, e.g., Caribbean Cruise Lines*, 169 So. 3d at 169.

2021) (noting that consumer harm under FDUTPA parallels consumer harm under the Sherman Act, which requires "specific damage done to consumers in the market").

State Farm also suggests that its insureds were harmed because At Home "purport[ed] to hold the insureds ultimately liable" if State Farm did not pay the claims At Home submitted, contrary to At Home's representations to them that they would not be liable.  There is evidence that At Home had customers sign documents stating they would be responsible for the repair charges if the insurer did not pay.  At Home also stated in some of its state court complaints and Civil Remedy Notices filed against State Farm that the customers remained responsible for the cost of repairs.  But it appears undisputed that At Home's policy and practice was to honor its representation to the customers that the repairs would be at no cost to them.  It is further undisputed that At Home never billed a customer for completed repairs.  As such, there was no actual harm to customers and this argument is purely hypothetical.

While the situation presented perhaps a possibility of some kind of harm in the future, if At Home changed its policy and decided to pursue the customers for payment, this is insufficient.  While Florida law on this point is not well developed, existing case law seems to require a claimant to prove that the defendant's conduct inflicted actual harm on at least one consumer, that is, "committed an unfair or deceptive trade practice *that injured a consumer*."  *Stewart Agency*, 266 So. 3d at 212 (affirming summary judgment for defendant) (emphasis supplied); *see also*

*Caribbean*, 169 So. 3d at 169 (holding that a FDUTPA plaintiff must "prove *there was an injury or detriment* to consumers") (emphasis supplied).[7]   A hypothetical possibility of some kind of injury in the future based on possible future actions by At Home or by State Farm is therefore insufficient.[8]

The situation is similar to that in *S. Broward Hosp. Dist. v. ELAP Services, LLP*, No. 20-61007-CIV, 2023 WL 6547748 (S.D. Fla. Sept. 30, 2023), *appeal dismissed by stipulation*, No. 23-13612-GG (11th Cir. Mar. 27, 2024).   In that case, the plaintiff hospital system brought a FDUTPA claim against a company that provided administrative services for medical claims by employees of self-insured employers.  *Id.* at *1-2.  The hospital system contended that the defendant

---

[7] Some federal district court cases frame the consumer harm requirement in terms of conduct that is "likely" to cause actual harm to consumers.  *See Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-CV-21484-MORENO/GOODMAN, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021), *report and recommendation adopted*, 2021 WL 3403208 (S.D. Fla. Aug. 4, 2021) ("A plaintiff alleging a violation of FDUTPA must allege that the conduct in question is likely to cause actual harm to the end consumer.").  State Farm's evidence, showing at most a possibility, not a likelihood, of harm at some point in the future, fails under this standard as well.

[8] State Farm, in footnotes in its reply memoranda, offers two anecdotes arguably going to the issue of consumer harm.  The first is Defendant Camp's testimony that when a rock hit the windshield on his car, which was covered by At Home's corporate insurance with GEICO, he had one of At Home's installers do the repair job and bought the glass himself, rather than submit an insurance claim. He explained that At Home had 30 company vehicles insured under the GEICO policy, and he wanted to minimize the number of claims submitted overall.  It is in that context that Camp stated, in a quote State Farm takes out of context, "if you put a lot of claims through insurance they're going to drop you."  This does not remotely demonstrate harm to At Home's customers or anyone else.  The other anecdote comes from an article in an industry publication called "glassbytes.com," which describes itself as a "free e-newsletter that covers the latest auto glass industry news."  The article describes a single unidentified customer's experience with a different auto glass company and a different insurance company in which almost $15,000 in claims were submitted for two replacements for a windshield that was represented as being under a recall.  This example also does not remotely constitute evidence of "consumer harm" in the context of this case.

systematically underpaid its claims for medical services. *Id*. The defendant moved for summary judgment on the FDUTPA claim on the ground that the hospital system had failed to offer evidence of consumer harm. *Id*. at *6.

The hospital system argued that the defendants' underpayments resulted in greater financial responsibility for the insured patients, because they were subjected to being balanced billed by the hospital system for charges not paid by insurance. *Id*. at *9. The record evidence, however, showed that the hospital system had not, in fact, balanced billed its patients for many years and that the defendant had "insulate[d] its clients from balance billing." *Id*. The court held that the hospital system's evidence of a few instances where it issued balance bill statements of a few hundred dollars, with no evidence any patient actually paid such a bill, was insufficient to show the consumer harm required for a FDUTPA claim. *Id*. at *9-10. The district court concluded: "Plaintiff's failure to demonstrate actual or likely consumer harm, after full discovery and extensive briefing, entitles Defendants to summary judgment on Plaintiff's FDUTPA claim." *Id*. at *10.

The same is true here. State Farm has presented no evidence that any of At Home's customers insured by State Farm were billed by At Home when State Farm refused to pay. Nor has State Farm presented evidence any customer was harmed financially, failed to receive the benefit of his or her bargain from At Home, or was unhappy with the repairs or the transactions at issue.[9] Numerous cases have

---

[9] State Farm's amended complaint quotes a handful of customers as stating they would not have agreed to the windshield repair if they had known the size of the bill At Home would send to State Farm. The complaint does not identify these customers or explain to whom they were speaking or under what circumstances. Furthermore, State Farm does not point

rejected FDUTPA claims where the plaintiff failed to allege specific and substantial harm to consumers, such as receiving something different or less valuable than they were promised or paying an inflated price for goods or services. *See, e.g.*, *Whertec*, 2021 WL 3555676, at *6 (FDUTPA complaint insufficient where it alleged that competitor made misrepresentations to plaintiff's customers about plaintiff's ability to perform, but failed to allege customers received less valuable service from any provider, or paid more for services, or were otherwise harmed).[10] The Court accordingly grants summary judgment for Defendants on State Farm's FDUTPA claims in Count I and Count II of the amended complaint, and denies State Farm's motion for summary judgment as to the FDUTPA claim in Count I, based on the lack of evidence of consumer harm.[11]

---

to these or any other similar facts either in support of its own summary judgment motion or in response to Defendants' motions. At the motion to dismiss stage, the Court ruled that State Farm had alleged facts plausibly suggesting the likelihood of consumer harm. However, at the summary judgment stage, State Farm must go beyond its allegations and proffer evidence creating a genuine issue of fact on this point. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[10] *See also CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *16 (M.D. Fla. Feb. 15, 2018) (dismissing complaint alleging that the defendant misrepresented itself to plaintiff's customers as an authorized dealer, noting that "Armstrong's allegations do not suggest the consumers received any product other than a true Armstrong Ceiling Product or that the consumer suffered any harm by virtue of having purchased Armstrong Ceiling Products from a non-authorized distributor."); *X Soc. Media, LLC v. X Corp.*, No. 6:23-cv-1903-JA-EJK, 2024 WL 3429412, at *3 (M.D. Fla. July 15, 2024) ("Here, the closest the Complaint comes to alleging harm to consumers is its assertion that Defendant's mark has resulted in present and likely future consumer confusion. This allegation, however, is not sufficient to plead a FDUTPA claim."); *cf. Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2022 WL 3272538, at *19 (M.D. Fla. Aug. 10, 2022) (summary judgment denied where issues of fact remained about whether consumers received the benefit of their bargain because the products purchased were not as represented).

[11] Because the Court grants summary judgment based on the absence of consumer harm, it need not address Defendants' other arguments regarding the FDUTPA claims. The Court

***Unjust Enrichment***

Count III of State Farm's amended complaint asserts a claim for unjust enrichment.  State Farm alleges that it conferred a "benefit" on At Home by paying more than $1 million to At Home on insurance claims, that At Home accepted the payments, and that it would be inequitable for At Home to retain them because the payments were obtained in violation of law, by false and deceptive practices directed at customers and the submission of false and misleading claims to State Farm.  At Home moves for summary judgment in its favor on this claim.  State Farm has cross-moved for summary judgment in its favor.

The elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) it would be inequitable for the defendant to retain the benefit "without paying the value thereof."  *Pincus v. Am. Traffic Solutions, Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022).  There is no dispute that State Farm provided a "benefit" to At Home in the form of more than $1 million in insurance payments to At Home or that At Home appreciated and accepted the "benefit" represented by these payments.  The parties'

---

will note, however, that Defendants' argument that these claims are exempted from FDUTPA by § 501.212(4), *F.S.*, is not well taken.  That section provides that FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by" the Office of Insurance Regulation.  This provision exempts claims against insurance companies or complaints about insurance-related activities, but does not prevent an insurance company "from asserting a claim against businesses whose trade practices are not under consistent scrutiny by a dedicated state agency."  *See Gov't Employees Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV, 2021 WL 8263492, at *9 (S.D. Fla. Mar. 30, 2021) (collecting cases).

dispute centers on the third element required for unjust enrichment: that At
Home's retention of the payments is inequitable.

Relying on *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739
F.3d 579 (11th Cir. 2013), State Farm argues At Home's retention of the payments
is necessarily inequitable or unjust because At Home was not legally entitled to
receive the payments in the first place.  In *Silver Star*, State Farm paid insurance
claims submitted by a medical provider that State Farm alleged was not properly
licensed.  *Id*. at 582-83.  Applicable statutory provisions expressly provided that
claims submitted by an unlicensed provider were "unlawful" and "noncompensable."
*Id*. at 583.  The Eleventh Circuit stated that where "an entity accepts and retains
benefits that it is not legally entitled to receive in the first place, Florida law
provides for a claim of unjust enrichment."  *Id*. at 584.  On that basis, the court
upheld a jury verdict for State Farm on an unjust enrichment claim awarding it
damages in the amounts it had paid the unlicensed provider.

State Farm's position as plaintiff here is arguably analogous to its position as
plaintiff in *Silver Star*.  State Farm alleges that At Home submitted claims to State
Farm that contained misrepresentations.  Although no statute expressly makes
these claims noncompensable, as it did in *Silver Star*, the insurance policy's fraud
and concealment provisions voids coverage for any person submitting a claim
containing false statements intended to misrepresent or conceal a material fact.[12]  If

---

[12] The Court has previously rejected State Farm's sweeping argument that any violation of
any law committed by Defendants in the conduct of their windshield repair business,
including violations in their dealings with customers, automatically renders any resulting
insurance claim non-compensable.  The Florida Supreme Court recently held that violations

State Farm can prove that At Home made false representations, then, absent a defense or excuse raised by At Home, there would be no coverage under the policy for the claims At Home submitted.  In that event, At Home would have received more than $1 million payments it was not legally entitled to receive.  Under the extension of *Silver Star* proposed by State Farm, it would be inequitable for At Home to retain these payments.

At Home contends a different principle applies here that precludes State Farm's unjust enrichment claim.  Florida law has long held in various contexts that a claim for unjust enrichment fails where the defendant has given adequate consideration in return for the benefit received.  *See e.g., Baptista v. JP Morgan Chase Bank, NA*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla 5th DCA 2007); *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. 4th DCA 1997).  At Home argues that it provided consideration in the form of windshield repair services to its customers insured by State Farm, and therefore cannot be liable for unjust enrichment.

The foregoing cases on payment of consideration did not, however, involve defendants who received funds they were not legally entitled to receive.  The Eleventh Circuit in *Silver Star* did not address the consideration issue, apparently because no one raised it.  The question then is whether, under Florida law, a

_____

of the Florida Motor Vehicle Repair Act by an auto glass repair company do not render resulting insurance claims void.   *See Gov't Employees Ins Co. v. Glassco, Inc.*, No SC2023-1540 (Fla. Sept. 25, 2024).

defendant's payment of consideration in exchange for a benefit precludes an unjust enrichment claim even where the defendant obtained the benefit in violation of law and therefore was not legally entitled to receive it.

In late 2022, the Florida Supreme Court in *Pincus*, 333 So. 3d at 1097-98, clarified the law on this point.  The *Pincus* decision, which came after *Silver Star,* forecloses State Farm's unjust enrichment claim.  In *Pincus*, the defendant ("ATS") operated a red-light camera system for the City of North Miami Beach, and billed violators.  *Id.* at 1096.  If violators chose to pay the fine by credit card, ATS charged them a service fee.  *Id.*  The plaintiff brought a putative class action against ATS on a theory of unjust enrichment, arguing that three different statutes prohibited ATS defendant from collecting the fee.  *Id.*  One of these prohibited any person from acting as a "money transmitter" for compensation unless the person had a license. *Id.* at 1097.  The plaintiff alleged that ATS acted as a money transmitter without a license and therefore had collected payments to which it was not legally entitled. *Id.*

The district court dismissed the complaint.  As to two of the three statutes at issue, the court ruled that the collection of the fee did not constitute a violation.  *See Pincus v. Am. Traffic Sols., Inc.*, No. 18-cv-80864-MIDDLEBROOKS, 2019 WL 9355827, at *7 (S.D. Fla. Jan. 14, 2019), *aff'd*, 25 F.4th 1339 (11th Cir. 2022).  As to the third statute, the court held that a violation of the prohibition on obtaining compensation as an unlicensed money transmitter would not support to an unjust enrichment claim because, in contrast to the statutory scheme at issue in *Silver*

*Star*, the statute in question did not expressly invalidate transactions carried out in violation nor did it provide for a private cause of action.  *See id.* at *7-9.

The plaintiff appealed, and the Eleventh Circuit certified to the Florida Supreme Court a serious of questions, some relating to whether the statutes had been violated and others relating to "the scope of Florida's unjust enrichment cause of action."  *See Pincus v. Am. Traffic Sols., Inc*, 986 F.3d 1305, 1311 (11th Cir. 2021). On the latter issue, Pincus argued he was in the same position as State Farm had been in *Silver Star*.  Just as the statutes in *Silver Star* had rendered claims by unlicensed providers unlawful and noncompensable (while not expressly providing a private right of action), the statute at issue in *Pincus* expressly prohibited unlicensed entities from acting as money transmitters "for compensation."  *Id.* at 1318.  "Thus, Pincus argue[d], by operating 'for compensation,' ATS made an unlawful, unenforceable transaction that can support an unjust enrichment action." *Id*.  Pincus accordingly argued that, just as in *Silver Star*, he could pursue a claim for unjust enrichment even though none of the statutes ATS allegedly violated provided for a private right of action.  *Id*.

ATS argued in response, among other things, that it had given the plaintiff adequate consideration in return for the fee it collected in the form of the convenience of paying the traffic fine by credit card.  ATS relied on *Baptista*, which held that "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails."  *Baptista*, 640 F.3d at 1198 n.3 (citing *Griggs,* 959 So. 2d at 331-32).

The Florida Supreme Court answered the certified question regarding the giving of consideration by the defendant, deeming its answer "determinative of the other questions before us." *Pincus*, 333 So. 3d at 1097.  The Court held that, even if ATS obtained the service fee in violation of Florida law, it was, as a matter of law, "not inequitable under the circumstances for ATS to retain the convenience fee because it 'first pa[id] the value thereof to the plaintiff'" in the form of saved postage charges and convenience for the customer who paid by credit card.  *Id.*  (quoting *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3d DCA 2017)).

*Pincus* therefore stands for the proposition that an unjust enrichment claim cannot exist if the defendant has given value in exchange for the benefits, even where the defendant has obtained the money or other "benefits" in violation of Florida law and was not legally entitled to receive them.  The Florida Supreme Court's dispositive answer in *Pincus* assumed that was precisely the situation presented, but it did not matter.  As the court put it, because ATS had given value for the fee, its retention of the fee was not inequitable, "even if the fee is prohibited under one or more of these statutes."  *Id.* at 1098.

State Farm argues *Pincus* should be limited to its facts and that it involved only "technical" violations of the statutes at issue there, but the Court finds this argument unpersuasive.  The Florida Supreme Court's focus in *Pincus* was not on the nature of the wrongdoing but on the scope of the unjust enrichment cause of action and in particular its third element:  that it be unjust or inequitable for the recipient of a benefit to retain that benefit "without first paying the value" of the

benefit.[13]  Where the defendant has already "paid the value" of the benefit that it receives, it is clear from *Pincus* that the existence of an underlying violation by which the defendant obtained the benefit cannot not supply the "injustice" element.

While the precise nature of the wrongdoing at issue here and in *Pincus* is different, the bottom line is the same:  in *Pincus*, just as here, the party receiving funds was alleged to have acted unlawfully and to have obtained payments it was not legally entitled to receive.  But State Farm does not dispute that At Home provided the repair services reflected in the insurance claims on which State Farm made payment.  Nor does it argue, much less point to evidence, that the value of those services was not adequate as compared to the more than $1 million in payments by State Farm to At Home.  This case is therefore squarely within the holding of *Pincus* and State Farm's unjust enrichment claim fails as a matter of law.[14]

---

[13] The *Pincus* court framed the issue as involving payment "to the plaintiff" based on the facts before it in that case, but it is clear that the payment of value need not be to the plaintiff as opposed to another party.  *See, e.g., Suzmar, LLC v. First Nat'l Bank of S. Miami*, 388 So. 3d 852, 856 (Fla. 3d DCA 2023) ("Under Florida law, '[w]hen a defendant has given adequate consideration *to someone* for the benefit conferred, a claim of unjust enrichment fails.'") (quoting *Griggs*, 959 So. 2d at 331-332) (emphasis supplied); *Johnson v. Chase Bankcard Services, Inc.*, 582 F. Supp. 3d 1230, 1236 (M.D. Fla. 2022) ("Plaintiff provides no authority for the proposition that the consideration must be paid to the individual conferring the benefit.  Indeed, Plaintiff's contention appears to be contrary to Florida law."), *appeal dismissed*, No. 22-10679-GG, 2022 WL 3716649 (11th Cir. June 24, 2022)

[14] Although State Farm made the payments to At Home, State Farm contends that individual Defendants Camp and Alexander are liable for unjust enrichment because they received "pass through" profits from At Home and were involved in the corporate operations alleged to have resulted in unjust enrichment.  Because the unjust enrichment claim against At Home fails, the claim as to Camp and Alexander fails as well.

For the foregoing reasons, the Court grants summary judgment in favor of Defendants and against State Farm on State Farm's affirmative claims for damages.  State Farm's motion for partial summary judgment on this claim is denied.

### *Declaratory Judgment*

Both sides have moved for summary judgment on State Farm's request for declaratory judgment in Count IV.  At Home additionally argues the declaratory judgment claim should be dismissed as a matter of the Court's discretion.  As discussed below, whether the declaratory judgment claim can be resolved at the summary judgment stage bears on the Court's decision whether to exercise its discretion to proceed with the claim.  Accordingly, the Court will address the parties' arguments relating to summary judgment before considering whether a declaratory judgment action should be permitted as a matter of judicial discretion.

<u>State Farm's Right to Avoid Payment</u>

State Farm seeks a declaration that it owes nothing further on At Home's insurance claims, whether partially paid or completely unpaid, on the ground that At Home's conduct in submitting the claims at issue violated the fraud and concealment provision in the policy. [15]   In order to void coverage under this

---

[15] State Farm asserts a second ground for the declaration it seeks, based on its argument that the services for which Defendants seek reimbursement were "not lawfully rendered," in that they were performed in violation of the FHSSA and the FTC Rule.  As noted above, the Court has previously ruled that these violations standing alone would not invalidate At Home's claims or render them noncompensable, absent a violation of the fraud and concealment provision in the policy.  The Court stands by that ruling and rejects State Farm's argument on this point.

provision, State Farm must show that At Home "made false statements with the intent to conceal or misrepresent [a] material fact or circumstance in connection with any claim under [the] policy."   The potential issues for trial, then, would be whether At Home in its claim submissions to State Farm (1) made false statements, (2) with the intent to conceal or misrepresent, (3) any material fact or circumstance.

On State Farm's motion for summary judgment, State Farm must show the record evidence is such that no reasonable jury could fail to return a verdict in its favor on each one of these three issues.   State Farm's motion fails because issues of fact remain, at a minimum, on the second element, At Home' intent.

The intent required to avoid coverage under a fraud or concealment provision is "a wil[l]ful, purposeful misrepresentation of facts having substantial materiality under circumstances to which the law would attributed the intention to defraud . . . that is, cheat, deceive and cause the insurer to do other than that which would have been done had the truth been told."   *Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 673 (Fla. 4th DCA 2021) (quotation omitted).   A party's intent generally presents an issue of fact.   *See, e.g., Gracia v. Sec. First Ins. Co.,* 347 So. 3d 479, 485 (Fla. 5th DCA 2022) ("[F]actual question's relating to fraudulent intent or state of mind are generally not ripe for summary judgment determination."); *Rodriguez v. GeoVera Specialty Ins. Co.*, 426 F. Supp. 3d 1318, 1329 (S.D. Fla. 2019) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial.") (internal quotation omitted).   Summary judgment is therefore rarely appropriate in fraud cases precisely because

the issue of intent must typically be established by circumstantial evidence based on all the facts and circumstances.  *See, e.g.*, *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029-30 (11th Cir. 2017).

State Farm's motion for summary judgment acknowledges that State Farm must establish At Home's intent, but State Farm does little more than assert that the alleged misrepresentations were intentional.  It develops no argument and points to no evidence to meet its initial summary judgment burden and the record as a whole presents issues of fact precluding summary judgment on the issue of intent.  State Farm's motion for summary judgment is therefore denied.

Turning to At Home's summary judgment motion, At Home does not bear the burden of proof at trial, and therefore may prevail at the summary judgment stage if it demonstrates the absence of evidence sufficient to support a verdict in State Farm's favor on any one or more of the three issues identified above, i.e., false statements, intent, and materiality.  The record, however, presents issues of fact on each of these issues.

State Farm points to three allegedly false statements in At Home's submissions of insurance claims:  that repair personnel actually worked the hours reflected on the invoice for each job, that the various fees and charges included in the invoice were "pass through" charges actually incurred by At Home with respect to each job, and that the insured had reviewed and approved the charges and agreed to be responsible for them in the event State Farm did not pay.  At Home's motion focuses on the elements of intent and materiality, discussed below, and says

little or nothing about whether an issue of fact exists as to the existence of false statements.   Accordingly, At Home's motion does not meet even its initial burden in moving for summary judgment as to this issue and the record in this case plainly presents issues of fact on whether information in the invoices could be construed as false statements.   To take just one example, the various charges listed on the invoices could be construed as representing to State Farm that At Home had actually incurred these specific costs in connection with the job in question.   To determine whether these constituted false statements of fact, a jury would be required to review the invoices in context and in light of all the evidence, including industry practice, At Home's intent, and State Farm's understanding.   At Home is therefore not entitled to summary judgment on the first element.

As to the second element, intent, At Home's arguments for summary judgment in its favor are as thin as State Farm's arguments on its motion.   For the most part At Home simply asserts State Farm has no evidence to prove intent. State Farm responds by pointing generally to At Home's overall course of conduct. While State Farm does not fully articulate its point, its argument seems to be that the jury should be allowed to infer the requisite intent from circumstantial evidence.

The Court agrees.   As noted above, intent must usually be inferred from all the facts and circumstances and therefore presents an issue of fact.   *See, e.g.,* *Gracia*, 347 So. 3d at 485; *Glob. Quest*, 849 F.3d at 1029-30.   That is the case here. The record facts regarding At Home's conduct, and in particular its submission of

invoices reflecting NAGS hours rather than actual labor hours, miscellaneous charges that did not correspond to discrete charges incurred by At Home, and the insured customer's approval of the charges and agreement to pay, individually and collectively are sufficient to raise an issue of fact as to At Home's intent.[16]   At Home, on the other hand, can point to contrary evidence supporting an innocent or merely negligent explanation for each alleged misrepresentation.  At Home asserts, for example, that billing based on NAGS recommended hours rather than actual hours worked was common and accepted practice in the industry.  The jury may accept such contentions and infer that At Home made no intentional misrepresentations, but it would not be required to do so.  At Home therefore is not entitled to summary judgment based on this issue.

The third and final element is materiality.  For a misrepresentation to be material, it must be such that "a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented."  *Trif*, 322 So. 3d at 671-72 (internal quotation omitted).  "The materiality of a misrepresentation is a question for the jury."  *Id*. at 672 (affirming judgment in favor of insureds on jury verdict finding, *inter alia*, that the "insureds did not intentionally misrepresent or conceal any material fact").  While an insurer seeking to avoid payment based on a fraud or concealment provision need not show it relied on the alleged

---

[16] "NAGS" refers to National Auto Glass Specifications, a publication used by automotive glass companies and insurers to price automotive glass replacement jobs.  *See, e.g., In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 355 (3d Cir. 2004); *Alpine Glass, Inc. v. Am. Family Ins. Co.*, No. 06-4213 (DSD/SRN), 2007 WL 1567630, at *1 (D. Minn. May 29, 2007).

misrepresentation, the issues of reliance and materiality are interrelated, because materiality turns on the likelihood the information would induce reliance in a reasonable insurer.  *See id*.

On this issue, At Home's motion simply asserts that the misrepresentations alleged by State Farm are not material.  State Farm's response, as on the issue of intent, is to point to record evidence of At Home's course of conduct, implicitly arguing that this record would allow the jury to infer the requisite materiality. Whether a reasonable insurer would attach importance to the matters in At Home's claim submissions will turn, among other things, on what "statements" the submissions are construed to make and how a reasonable insurer in State Farm's position would use the specific information in making its payment decision.  In the absence of a better developed argument on either side of this issue, the Court concludes the general rule applies here – materiality presents an issue of fact for the jury. [17]

In short, on this record, At Home's motion for summary judgment on its declaratory judgment count relying on the fraud and concealment provision must be denied to the extent it argues that no record evidence supports State Farm's allegations of material misrepresentations by At Home in the submission of claims.

<u>At Home's Defenses</u>

That leaves for determination whether At Home is entitled to summary judgment based on its defenses.  Because At Home bears the burden of proof on

---

[17] The Court declines to scour the filings by the parties to attempt to construct a set of complete arguments on this point.

these defenses, in order to meet its initial burden as movant on summary judgment, it must point to evidence sufficient to require a directed verdict in its favor if not contradicted, and the ultimate issue is whether a reasonable jury could return a verdict for State Farm. *See Fitzpatrick,* 2 F.3d at 1115-16.

The defenses on which At Home moves for summary judgment fall into two categories. First are defenses of voluntary payment and "avoidable consequences." These would apply only to State Farm's damage claims and are irrelevant on the declaratory judgment count.

In the second set of defenses, At Home argues that waiver, collateral estoppel (issue preclusion), and the compulsory counterclaim rule prevent State Farm from using the fraud and concealment provision to avoid payment. [18] As to waiver, At Home argues that State Farm's payments on some of the claims constituted an admission of liability as to the entirety of those claims. This defense would not apply to the claims on which State Farm has made no payment, and summary judgment is due to be denied for that reason alone. Moreover, At Home concedes it would only apply if State Farm was unaware of the facts when it made the payment. Yet At Home offers no argument and points to no evidence regarding State Farm's knowledge.

---

[18] At Home refers to the compulsory counterclaim rule as an aspect of its waiver defense, on the ground that At Home's failure to assert a counterclaim in each state court case arising out of the same transaction or occurrence constituted an abandonment of the claim. *See* Fla. R. Civ. P. 1.170(a) ("A pleading must state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .")

At Home also grounds its waiver argument on settlement agreements and agreed orders granting summary judgment for At Home in the state court cases. Neither the summary judgment orders nor the language At Home cites from the settlement agreements purports to address issues other than those relevant to the specific case and specific insurance claim involved nor does the language reflect an intent to preclude State Farm from litigating issues in other suits in relation to other insurance claims.  *See State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1168 (S.D. Fla. 2015) ("Like res judicata, when a judgment dismissing an action with prejudice is based upon a settlement agreement between the parties, it is the express intent of the parties that is the determining factor whether the judgment is given collateral estoppel effect.").  Accordingly, none of these settlement agreements or orders prevents State Farm from litigating the claims at issue here (assuming, as State Farm represents, that it is not pursuing claims here based on insurance claims it has settled).

Additionally, collateral estoppel applies only where the same parties and the same issues were involved in a prior suit and the issues were actually litigated. "Generally, matters dismissed on the basis of a settlement agreement do not support collateral estoppel because the purpose of settlement is to avoid the actual litigation of an issue."  *Id.*  At Home points to no case in which the issues presented here were fully litigated.  Even if At Home could meet the other requirements, it is clear that its collateral estoppel and compulsory counterclaim defenses would not operate until there is a final judgment in the relevant state court action.  *See, e.g.,*

*Calderon v. U.S. Bank Nat'l Ass'n as Tr. for SG Mortgage Sec. Tr. 2006-FRE2 Asset Backed Certificates Series 2006-FRE*2, No. 6:19-cv-890-Orl-37LRH, 2020 WL 6270953, at *3 (M.D. Fla. Feb. 12, 2020)  ("As the state court has not entered final judgment, the state court action is still pending and Florida's compulsory counterclaim rule does not bar this suit.");  *Lewis v. Conn. Gen. Life Ins. Co.*, 427 So. 2d 254, 254 (Fla. 5th DCA 1983) (noting that "a judgment is essential to the operation of either res judicata or estoppel by judgment"); *Shamsid-Deen v. Miami Dade Cty. Circuit Court,* 05-20055-CIV, 2006 WL 680548, at *2 (S.D. Fla. Feb. 27, 2006) ("Because this decision is still pending, res judicata and collateral estoppel will not apply to bar this action. It is elemental that neither res judicata nor collateral estoppel can apply until a final judgment has been entered.").   At Home points to no final judgment in a state court case that could support one or more of these defenses.[19]

Based on the foregoing, the Court concludes that a trial will be required to resolve State Farm's declaratory judgment claim.   The parties appear to agree that the declaratory judgment count would be tried to a jury, and the Court agrees as well.[20]  The case therefore presents the prospect of a complex 5 to 7-day trial before

---

[19]  The Court addresses State Farm's additional contention that the required identity of parties is lacking below in the context of the Court's exercise of its discretion.

[20] A declaratory judgment action is neither legal nor equitable, but takes its character from the nature of the underlying dispute. *See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988).  Whether the claim is legal or equitable turns on how the issues would have been presented had the declaratory judgment mechanism been unavailable. *Id*.; *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).  In this case, the issues would come before a court in an action by At Home seeking payment of

a jury primarily to determine whether At Home intentionally made false representations in the submission of its insurance claims to State Farm. With this prospect in mind, the Court turns to whether, as a matter of its discretion, the Court should proceed with the declaratory judgment claim.

The Court's Discretion

State Farm filed this suit on February 1, 2021. The complaint identified 2,989 claims on which State Farm had made a payment and as to which it sought damages. In moving for summary judgment in December 2023, State Farm identified 2,230 claims still at issue on which it had made payment (the lower number presumably reflecting settlements or other reasons to exclude claims from the original list) and another 3021 claims on which State Farm had made no payment.

A large number, if not the majority, of these claims are the subject of thousands of pending suits by At Home in state courts throughout the State of Florida. State Farm represents that the claims included in this suit do not include claims on which At Home had already filed suit in state court and perfected service on State Farm at the time State Farm served At Home in this lawsuit. As to the pending state court lawsuits, some have apparently been stayed at the request of State Farm to await the outcome of this lawsuit; others have not. Under Florida law, a state court does not have to stay its hand to await the outcome of an earlier-

---

money, which is a legal claim, and State Farm's declaratory judgment claim therefore must be tried to a jury.

filed federal suit, although it may be the "usual practice" to enter such a stay in the interest of comity.  *See Shooster v. BT Orlando Ltd. P'ship*, 766 So. 2d 1114, 1116 (Fla. 5th DCA 2000).

From the outset of this case, the Court has expressed its concern with two global issues.  First, given the volume of claims at issue, the Court has been concerned about the practical feasibility of State Farm attempting to prove claims that could involve detailed individual evidence with respect to thousands of different consumer transactions and resulting claim submissions.  While State Farm has assured the Court it could establish its claims on a global basis with summary proof, the Court remains skeptical of this approach.

The Court's second concern has been whether these purely state law claims should be resolved in state courts rather than federal court.  In point of fact, thousands, if not tens of thousands, of these so-called "windshield cases" have been litigated in state courts throughout Florida for years.  Because these cases usually involve small amounts in controversy they are typically litigated in Florida County Courts, as opposed to Circuit Courts, and Florida's County Court judges have developed considerable expertise in handling these types of cases.[21]  The Court requested that the parties brief various potentially applicable abstention doctrines that might suggest the Court should decline to proceed.  State Farm's memorandum

---

[21] Until 2020, Florida's County Courts were permitted to handle civil disputes involving $15,000 or less.  Effective January 1, 2020, the jurisdictional limit was raised to $30,000, and effective January 1, 2023, the jurisdictional limit was raised to $50,000.  *See* § 34.01, *F.S.*

argued that no abstention doctrine applied.  Defendants reached the same conclusion.

State Farm's memorandum, however, raised an issue not addressed by Defendants – whether the Court should decline to proceed with the declaratory judgment count as a matter of its discretion under the principles of *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  As described by State Farm, *Brillhart-Wilton* "permits federal courts, under limited circumstances, to decline permissive jurisdiction over a federal action that seeks solely declaratory relief, provided there is another parallel action 'pending in a state court presenting the same issues, not governed by federal law, between the same parties.'"  (Doc. 89 at 9-10) (citing *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005)).[22]  State Farm argued this doctrine did not apply "because this case seeks money damages and other relief through claims for violations of FDUTPA and a common law claim for unjust enrichment, in addition to declaratory relief."  (Doc. 89 at 9-10).

The Court thereafter denied the pending motions to dismiss State Farm's amended complaint but indicated that it ultimately might decline to exercise its jurisdiction to proceed with the declaratory judgment claim.  The Court has disposed of State Farm's damage claims under FDUTPA and the common law of

---

[22] State Farm's restrictive formulation is misleading.  Federal courts have "substantial" discretion in deciding whether to issue a declaration, and the existence of a parallel state court proceeding is not required.  *See Nat'l Tr. Ins. Co. v. S. Heating & Cooling, Inc.*, 12 F.4th 1278, 1284 (11th Cir. 2021).

unjust enrichment.  The issue now presented is whether the Court should exercise its discretion to decide State Farm's declaratory judgment count.

In addressing whether to proceed with a declaratory judgment claim, courts consider a non-exhaustive set of factors that include the following:

> (1)  the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2)  whether the judgment in the federal declaratory action would settle the controversy;
>
> (3)  whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
>
> (5)  whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6)  whether there is an alternative remedy that is better or more effective;
>
> (7)  whether the underlying factual issues are important to an informed resolution of the case;
>
> (8)  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (9)  whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.  With these factors in mind, as well as the other matters discussed below, the Court will exercise its discretion to dismiss State Farm's declaratory judgment action, based on the following considerations.

First, the Court affords significant weight to the Florida court system's interest in resolving this dispute and to whether a ruling by this Court would encroach on the jurisdiction of Florida's state courts.  The issues in this case are governed by Florida law, not federal statutory or common law.  The case involves a Florida LLC and Florida individuals as the defendants, and it implicates windshield repairs performed by At Home for thousands of Florida citizens.   As noted, Florida's County Court judges have developed considerable expertise in handling these types of cases.  The interests of Florida's state court system are strong here.

Moreover, the Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts not only from enjoining state court proceedings but also from issuing declaratory judgments that would have the effect of deciding and preempting the matter in pending state court lawsuits.  *See, e.g.*, *Lawrence v. JP Morgan Chase Bank, N.A.*, No. 10-81631-CIV, 2011 WL 2039097, at *1 (S.D. Fla. May 25, 2011) (citing *Thiokol Chem. Corp. v. Burlington Indus., Inc.,* 448 F.2d 1328, 1332 (3d Cir.1971) and *Texas Employers Ins. Assn. v. Jackson,* 862 F.2d 491, 505-506 (5th Cir.1988)).[23]  By issuing a declaration that nothing is owed on the claims at issue

---

[23] State Farm asserts that the claims at issue in this suit do not include claims that were the subject of state court suits by At Home that had been served on State Farm prior to service of process on Defendants in this suit.  It nevertheless appears that thousands of suits have been filed in state court by At Home since the inception of this case.  While decisions conflict on this issue, the Court believes the better reasoned decisions hold that the Anti-Injunction Act applies to preclude injunctions or declarations with respect to state

here, the Court would effectively decide and preempt a determination by the state courts entertaining these claims as to how much, if anything, State Farm owes At Home on the claims.  Without finally deciding whether the Anti-Injunction Act would preclude a declaration here, at a minimum, considerations of comity underlying the act militate against such a declaration.

Another consideration involves whether State Farm's suit involves "procedural fencing" or forum shopping.  By filing this suit in federal court State Farm obtained a federal forum on the issue of the fraud and concealment provision of its policy that it would not have had by asserting that as a defense in state court cases.  The overwhelming majority of those cases would not be removable due to the small amount in controversy in each case.  At the same time, the Court recognizes that this case involves a set of common business practices by At Home that arguably affected thousands of claims.  There would be an inefficiency and risk of inconsistency in litigating each claim At Home submitted to State Farm in a separate state court suit.  If the invalidity of all the claims could be established in a

_____

court suits pending at the time the injunction or declaration is issued, even if the state court suits were filed after the federal action was filed.  *See, e.g., Denny's, Inc. v. Cake*, 364 F.3d 521, 529 (4th Cir. 2004) ("[N]othing in the Act confines its bar to situations in which the federal plaintiff requests injunctive relief *after* the state suit has been filed.").   The Court has also considered whether any of the three exceptions to the Anti-Injunction Act's prohibition would apply here and believes they would not.  Without deciding the matter, as noted above, the Court is inclined to think that entry of a declaration is not within an exception because it is not expressly authorized by an act of Congress in these circumstances, nor necessary in aid of the Court's jurisdiction (an exception generally limited to *in rem* proceedings), nor necessary to protect existing judgments of this Court. *See Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 676 (11th Cir. 2012).

single suit as State Farm seeks to do here, this would further the interests of judicial efficiency and economy.  Thus, State Farm might well have been motivated in whole or in part by a desire to resolve the dispute in a more efficient and consistent way than having thousands of individual determinations in the pending and to-be-filed state court lawsuits.  The Court concludes this factor is neutral with respect to the Court's exercise of discretion to proceed.

Third, and related to the efficiency issues just noted, the Court has considered whether proceeding to decide the declaratory judgment count would accomplish something useful and whether it would resolve the entire controversy between the parties.  The Court concludes this issue tips the balance in favor of dismissal, based on an argument State Farm itself has raised.

In moving for summary judgment on At Home's defenses of res judicata and collateral estoppel, and in responding to At Home's summary judgment motion on these defenses, State Farm argues that the required identity of parties is lacking in the state court suits and in this one.  At Home is appearing in the state court suits and in this suit in different capacities because, in the state court cases, State Farm argues, At Home is suing in its capacity as an assignee of its customers who are State Farm insureds.  State Farm's implicit point appears to be that At Home's appearance in this case is in a different capacity, presumably in its individual capacity.

Florida law does appear to hold that a party suing as an assignee is not "identical" for preclusion purposes from a party appearing in its individual capacity.

*See Nationwide Terminals, Inc. v. MC Constr. Grp., Inc.*, 964 So. 2d 705, 706 (Fla. 3d DCA 2007); *United Auto. Ins. Co. v. Millennium Radiology, LLC*, 337 So. 3d 834, 837 (Fla. 3d DCA 2022) (party suing as assignee derives its identity for preclusion purposes from its assignor).   But if that is the case, and a judgment in one or more of the state court cases would not have preclusive effect in this case, as State Farm argues, then the same principle might well apply in the other direction:  a declaratory judgment by this Court (against At Home in its individual capacity) might not bind the parties to any pending or future suit brought in state court by At Home seeking payment (in its capacity as an assignee of its customers), based on a lack of identity of parties.[24]

The Court need not conclusively decide whether State Farm's argument on identity of parties is correct or whether the same principle would apply in the reverse situation of a declaratory judgment issued by this Court.  The significant point for purposes of this analysis is that, in this unusual situation, absent some guiding case law (and the Court has found none), there would be no certainty that a

---

[24] While the matter is not entirely free from doubt, it appears likely that Florida courts would apply Florida law to determine the preclusive effect of any judgment entered in this federal court diversity suit.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001) (holding that federal common law determines the preclusive effect of federal judgments, but that when considering a federal judgment in a diversity case, federal common law incorporates the preclusion rules of the forum state); *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enterprises, Inc.*, 227 So. 3d 612, 616 (Fla. 4th DCA 2017) (recognizing that, under *Semtek*, states should apply state law when assessing the preclusive effect of a federal judgment in a diversity case, but acknowledging that the court's case law subsequent to *Semtek* has not distinguished between diversity cases and federal question cases when considering the preclusive effect of federal judgments).

declaratory judgment would bind the parties in pending or subsequent suits by At Home and thereby end the controversy.

On balance, the issues here involve state law issues and Florida's state court system has a stronger interest in determining these issues than this Court does. The chief advantage of a declaratory judgment action in this context is the potential for efficiency and consistency of rulings on the issues presented, but there is significant doubt whether a judgment would accomplish anything useful or resolve the entire controversy between the parties.

## <u>Conclusion</u>

Accordingly, summary judgment is granted for Defendants on State Farm's claims under FDUTPA (Counts I and II) and unjust enrichment (Count III). The Court exercises its discretion to dismiss State Farm's claim for declaratory judgment (Count IV).

It is therefore.

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.   "Defendant, At Home's, Motion for Summary Judgment" (Doc. 152) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2.   "William Camp's Motion for Summary Judgment" (Doc. 153) is **GRANTED** as set forth herein.

3.   "Nicholas Alexander's Motion for Summary Judgment" (Doc. 155) is **GRANTED** as set forth herein.

4.   "Plaintiffs' Motion for Partial Summary Judgment" (Doc. 156) is

     **DENIED**.

5.   The Clerk is directed to enter a final judgment on Counts I, II, and III of

     the amended complaint in favor of Defendants At Home Auto Glass, LLC,

     William Camp, and Nicholas Alexander and against Plaintiffs State Farm

     Mutual Automobile Insurance Company and State Farm Fire and

     Casualty Company, and dismissing Count IV of the amended complaint.

6.   Following entry of judgment, the Clerk is directed to terminate any

     pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of
September, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE